1 | BLOOD HURST & O'REARDON, LLP
2 | TIMOTHY G. BLOOD (149343)
   | THOMAS J. O'REARDON II (247952)
3 | PAULA R. BROWN (254142)
   | ADAM M. BUCCI (327312)
4 | 501 West Broadway, Suite 1490
   | San Diego, CA 92101
5 | Tel: 619/338-1100
   | 619/338-1101 (fax)
6 | tblood@bholaw.com
   | toreardon@bholaw.com
7 | pbrown@bholaw.com
   | abucci@bholaw.com

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES,
  P.C.
W. DANIEL "DEE" MILES, III *
H. CLAY BARNETT, III *
J. MITCH WILLIAMS *
DYLAN T. MARTIN *
TRENT H. MANN *
218 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
Dee.Miles@Beasleyallen.com
Demet.Basar@beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@beasleyallen.com

Attorneys for Plaintiff

*pro hac vice forthcoming*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ASHLEY LEON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HONDA MOTOR CO., LTD., and AMERICAN HONDA MOTOR CO., INC.,

Defendants.

Case No. 2:24-cv-07872

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

00218549

Plaintiff Ashley Leon brings this action against Defendants Honda Motor Co. Ltd. and American Honda Motor Co. Inc. (collectively "Defendant" or "Honda"), by and through her attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of current and former owners and lessees of certain 2018-2023 Honda Odyssey vehicles (the "Class Vehicles")[1] sold with defective rear sliding door obstruction detection systems.

2.      This action arises from Honda's failure, despite its longstanding knowledge of a material design and manufacturing defect, to disclose to Plaintiff and other consumers that the Class Vehicles' rear sliding doors fail to detect obstructions in the door's path, such as a child's hand, for example, when closing (the "Door Defect").

3.      Complaints submitted by consumers online and Plaintiff's independent automotive consultant's testing confirm the Class Vehicles' rear sliding doors cannot detect if an obstruction is in the path of the rear sliding doors, causing the Class Vehicles' doors to close, even when an obstruction is blocking its path.

4.      For example, Plaintiff's independent automotive consultant's testing confirmed that it would take over 47.25 pounds of pressure for the rear sliding doors to retract, far more than comparable vehicles on the road.[2]

---

[1]      The Class Vehicles include 2018-2023 model year Honda Odyssey vehicles that were manufactured with the same sliding door sensor assembly—Part Number 72812 (right door) and 72852 (left door).

[2]      For example, similar testing of a 2020 Chrysler Voyager confirmed it would retract at up to 16 pounds of pressure.

CLASS ACTION COMPLAINT

5.    As a result, there exists an increased risk that the sliding door will close on a person's hand or foot, causing significant injuries. In fact, complaints submitted by consumers and Plaintiff's independent automotive consultant's testing confirmed that the Class Vehicles' rear sliding doors can close on, and severely injure, hands, fingers, toes, and feet, among other things:



6.    All the Class Vehicles were manufactured with the same sliding door sensor assembly — Part Number 72812 (right door) and 72852 (left door).[3]

7.    Significantly, the Door Defect jeopardizes the safety of the Class Vehicles' occupants by making them more vulnerable to severe injuries, such as

---

[3]    Discovery has yet to take place, and Plaintiff reserves the right to modify, change, or expand the Class definition.

broken bones or amputations. The Door Defect poses a particular risk to young children because it occurs in vehicles primarily used to carry children and even occurs where children are typically seated, in the back seats.

8.    Honda has long been aware of the Door Defect, it even admitted knowing about the Door Defect through an incomplete and partial disclosure in the owners' manuals.

9.    Yet notwithstanding its longstanding knowledge, Honda routinely has refused to repair the Class Vehicles without charge after the defect manifests, if any repair is offered at all.

10.    Not only did Honda actively conceal the fact that the obstruction detection system does not function properly, but Honda also failed to advise Class Members that the existence of the Door Defect diminishes the intrinsic and resale value of the Class Vehicles, leading to the safety concerns described herein.

11.    Owners and lessees of Class Vehicles have communicated with Honda and its agents to request that they remedy and/or address the Door Defect and/or resultant damage at no expense. Yet Honda has failed and/or refused to do so.

12.    Honda has taken no action to correct the root cause of the Door Defect, whether it manifests either in or outside of the relevant warranty period.

13.    Because the Door Defect will manifest within and outside of the warranty period for the Class Vehicles—and given Defendant's knowledge of this concealed, safety-related design defect—Honda's attempt to limit the applicable warranties with respect to the Door Defect is unconscionable.

14.    Despite notice and knowledge of the Door Defect from the numerous consumer complaints it has received, information received from dealers, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, including similar door latch part failures in prior model year vehicles, Honda has not recalled the Class Vehicles to repair

00218549

the Door Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse consumers who have incurred out-of-pocket expenses to repair the Door Defect.

15. As a result of Honda's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.

16. The unfair and deceptive trade practices Honda committed were conducted in a manner giving rise to substantial aggravating circumstances.

17. Each purchaser or lessee of a Class Vehicle unwittingly paid for a vehicle with an undisclosed and significant safety defect. Each of these purchasers and lessees were damaged in that they paid more for their Class Vehicles than they would have, had they known about the Door Defect or in that they would not have purchased or leased their Class Vehicles at all had they been informed of the defect.

18. As a result of the Door Defect and the monetary costs associated with attempting to repair it, Plaintiff and other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Honda's conduct.

19. Accordingly, Plaintiff brings this action to redress Honda's violation of Virginia's consumer protection statutes and breach of its express and implied warranties.

**JURISDICTION AND VENUE**

20. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiff is citizen of a different state than Honda.

21. This Court has personal jurisdiction over Plaintiff because she submits to the Court's personal jurisdiction.

22. This Court has personal jurisdiction over Honda because Honda conducted and continues to conduct substantial business in this District; its

CLASS ACTION COMPLAINT

corporate headquarters is located in this District; and because it has committed the acts and omissions complained of herein in this District, including the marketing, selling, and leasing of Class Vehicles in this District.

23.   Venue as to Honda is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of Honda's acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiff and members of the putative Class in this District.

**PARTIES**

*Plaintiff*

24.   Plaintiff Ashley Leon is a citizen of Virginia and resides in Woodbridge, Virginia.

25.   Plaintiff purchased a used 2018 Honda Odyssey from Carmax in Woodbridge, Virginia in February 2022.

26.   Prior to purchasing her Class Vehicle, Plaintiff Leon reviewed Honda's promotional materials, which touted the reliability and safety of the Class Vehicle.

27.   Through her exposure and interaction with Honda, Plaintiff Leon was aware of Honda's uniform and pervasive marketing message of dependability and safety, which is a primary reason she purchased her Class Vehicle. However, despite touting the safety and dependability of the Class Vehicles, at no point did Honda disclose to her the Door Defect.

28.   Plaintiff Leon has suffered an ascertainable loss as a result of Honda's omissions associated with the Door Defect, including, but not limited to, their out-of-pocket loss associated with having to repair the Door Defect and future attempted repairs and diminished value of their vehicle.

00218549

29.   Particularly, on July 15, 2022, the Door Defect first manifested in Plaintiff Leon's vehicle. Plaintiff Leon's daughter was severely injured by the Door Defect, causing her hand to be crushed between the sliding door and the door frame, leaving noticeable bruises on her daughter's hand. As a result, Plaintiff Leon limits the use of her Class Vehicle's sliding doors and does not permit her children to open or close the doors from inside due to her significant, and reasonable, concerns regarding the safety and reliability of the vehicle.

30.   Plaintiff Leon's 2018 Odyssey is not subject to any technical service bulletins, special service campaigns, or recalls for the Door Defect, as further explained below. As such, Plaintiff Leon has been left without a remedy and, as a result of Honda's conduct and the Door Defect, is continuously exposed to an increased risk of severe injury or death.

31.   Having been aware of the Door Defect within the Class Vehicles and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Door Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

32.   Neither Honda, nor any of its agents, dealers or other representatives informed Plaintiff of the existence of the Door Defect prior to either her purchase of the vehicle, or when she took the vehicle in for repair.

33.   Had Honda Disclosed the Door Defect, Plaintiff Leon would not have purchased her Class Vehicle, or certainly would have paid less to do so.

34.   Plaintiff, individually and on behalf of the other Class members of the below-defined Class notified Honda of the Door Defect in the Class Vehicles—and Honda's corresponding breach of warranties and violations of state consumer protection acts—through a notice letter dated September 10, 2024, and sent by United States Certified Mail to Honda through its registered agent at 2 North Jackson Street STE 607, Montgomery, Alabama 36104.

00218549

*Defendants*

35.    Defendant Honda Motor Company, Ltd. ("HML") is a Japanese corporation, with its principal place of business at 2-1-1, Minami-Aoyama, Minato-Ku, Tokyo 107-8556 Japan, and the parent of Defendant American Honda Motor Company, Inc.

36.    HML through its various entities (including American Honda Motor Company), designs, manufacturers, markets, distributes, and sells Honda automobiles across the United States, including the Class Vehicles.

37.    Defendant American Honda Motor Company, Inc. ("HMA") is a California corporation with its principal place of business in Torrance, California.

38.    HMA is the United States sales and marketing subsidiary of, and is wholly owned by, HML, and is responsible for distributing, marketing, selling, and servicing Honda vehicles in the United States, including the Class Vehicles.

39.    At all relevant times, HMA acted as an authorized agent, representative, servant, employee, and/or alter ego of HML while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Mazda vehicles in the United States.

40.    HMA renders services on behalf of HML that are sufficiently important to HML and its sale of vehicles in the United States that HML would perform those services itself if HMA did not exist.

41.    Upon information and belief, HML controls the public name and brand of HMA, and in consumer transactions, like those with Plaintiff and the proposed class, HML's unified brand and logo serve as its and HMA's official seal and signature as to consumers.

42.    HML operates HMA with a unity of interest and owners such that HMA is a mere instrumentality of its parent, HML.

7

CLASS ACTION COMPLAINT

43.    HML and HMA engage in the same business enterprise and share common board members and employees. Upon information and belief, HML has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over HMA's work, including but not limited to the manner of Honda Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Door Defect.

44.    At all relevant times to this action, Defendants manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Honda brand name throughout the United States.

45.    Honda and/or its agents designed, manufactured, and/or installed the defective components and/or software in the Class Vehicles.

46.    Additionally, Defendants developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

## FACTUAL ALLEGATIONS

**A.    Honda Has a Long History of Touting the Safety, Quality, and Reliability of Its Vehicles**

47.    Through its network of over 1,000 dealerships across the United States, Honda has become one of the top automakers in the United States in terms of sales.

48.    In 2020 and 2021, Honda sold 1.34 million and 1.46 million vehicles, respectively.[4]

49.    In 2021, 95% of the Honda and Acura automobiles sold in the United States were produced in North America.

---

[4]    https://www.best-selling-cars.com/usa/2021-full-year-usa-honda-and-acura-sales-by-model/#:~:text=Honda%20Brand%20Sales%20in%20the,top%2Dselling%20Ho

8

00218549

50.     A 2019 McKinsey & Company report noted that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[5]

51.     Honda is a large player in the United States auto-market based on its assurances to consumers of care, durability, and quality.

52.      Consistent with its marketing and public statements, Honda falsely represents its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

53.     Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[6] Therein, Honda states that it conducts "3D Model Testing," and touts that it has "developed an advanced safety visualization technology to create highly detailed three-dimensional models of a vehicle's crash safety structure."

54.     Further, Honda states that "[f]or 50 years, Honda has built some of the most-praised vehicles on the road – and some of the safest," linking to a webpage listing Honda's lineup of awards.[7]

55.     Notwithstanding the presence of the Defect in millions of Class Vehicles, which poses serious threats of injury, Honda calls itself "a mobility company–we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[8]

---

nda%20car%20 (last visited August 27, 2024)

[5]     https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market#

[6]     *Id.*

[7]     *Id.*

[8]     https://www.honda.com/safety/virtual-and-real-world-tests

9

00218549

56.    Honda claims that the safety testing procedures it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."[9]

57.    Honda's website has a section devoted to safety, called "Safety For Everyone."[10] Therein, it includes promotional videos touting the pre-sale safety testing it conducts.

58.    For example, the webpage includes a video interview with Bryan Hourt, Chief Engineer for North America Safety Strategy and Planning, in which he touts the various pre-sale tests that Honda conducts and its "development of core safety technologies."[11]

59.    Honda's YouTube channel similarly displays a commercial titled "Each Honda is engineered with Safety for Everyone in mind," dated January 8, 2021.[12]

60.    In the commercial, Honda's Manager/Principal Engineer of Crash Safety touts Honda's "safety for everyone philosophy." The video description reads, "[f]rom our own family members to yours, safety is a top priority when engineering our vehicles. When you or your loved ones get behind the wheel of a Honda, you're driving a vehicle that's been designed with Safety for Everyone in mind." [13]

61.    The consistently uniform marketing message from Honda concerning the reliability of its vehicles is also found in Honda's marketing brochures for the

---

[9]    *Id.*

[10]    https://hondanews.com/en-US/safety

[11]    https://hondanews.com/en-US/safety/channels/channel-ca54ead83e3667d0b2045585b001b6d4?sortOrder=PublishedAscending&selectedTabId=channel

[12]    https://www.youtube.com/watch?v=t5VltkR4J_w

[13]    *Id.*

CLASS ACTION COMPLAINT

00218549

1  Class Vehicles.

2  62.  Featured prominently in Honda's marketing materials are claims of
3  excellence in quality, design, safety, and reliability.

4  63.  On information and belief, Honda requires its marketing brochures
5  to be provided to prospective customers at its network of dealerships.

6  **B.  The Door Defect**

7  64.  Despite its public commitment to safety, Honda designed,
8  manufactured and sold/leased the Class Vehicles with a known but undisclosed
9  safety defect (i.e., the "Door Defect").

10  65.  The Class Vehicles are minivans designed, manufactured, and
11  marketed by Honda and sold/leased across the United States. The Honda Odyssey
12  was first made available as a 1995 model-year vehicle.

13  66.  Honda released its fifth and current generation of the Honda Odyssey
14  in 2018.

15  67.  The 2018-2023 Honda Odyssey vehicles (i.e., the "Class Vehicles"),
16  use the same design, manufacturing, and parts, including those parts involved in
17  the Door Defect.

18  68.  The Class Vehicles feature powered rear sliding doors that open and
19  close automatically when the driver engages interior switch controls inside the van,
20  a keyless remote, or exterior handles.

21  69.  Recognizing the need to detect obstructions, the rear sliding doors
22  also feature a "pinch sensor" for "[i]f the power sliding door senses resistance
23  when closing automatically, it will stop closing and reverse direction. The beeper
24  sounds." *2022 Odyssey Owner's Manual*, p. 186.

25  70.  The "pinch sensor" is located within the weather stripping on the
26  sliding door:

27  ///

28  ///

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



9    71.    By design, the pinch sensor acts like a switch by reversing the sliding

10   doors' movement if an obstacle is detected.

11   72.    However, the pinch sensor fails to operate as intended and allows the

12   rear sliding doors to close and injure hands, toes, feet, and other objects in the

13   door's path.

14   73.    There is an approximate three-inch gap between the pinch sensor,

15   which is located at the outside edge of the door, and the inside edge of the door,

16   meaning it cannot detect obstacles from within the vehicle that are less than three

17   inches from the outside edge of the door.

18   74.    If the pinch sensor is touched early in the closing sequence, it can

19   reverse the doors' direction with only 1.5 to 2 pounds of pressure.

20   75.    However, as the closing sequence progresses, more pressure is

21   required to reverse the door. For example, as the door is close to latching within

22   the closing sequence, the pinch sensor requires more than 47.25 pounds of pressure

23   to initiate an automatic reverse, which is enough force to severely injure, and in

24   some cases, sever, human fingers or toes, among other things.

25   ///

26   ///

27   ///

28

76.    Below shows testing mimicking a human hand where the pinch sensor failed to detect the object and/or reverse the closing sequence:



00218549



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



14

00218549





77. Moreover, the pinch sensor cannot detect an object that is .3 inch or smaller (about the size of the tip of a human finger), which is approximately the size of the black circle below:

●

78. The Class Vehicles pinch sensors fail to detect obstacles that comparable vehicles can detect. For example, a 2020 Chrysler Voyager consistently retracts with about 17 pounds of pressure. A pre-Class 2015 Honda Odyssey similarly retracts with about 16 pounds of pressure.

79. The Door Defect presents a significant safety hazard, leading to broken bones, amputations, and other major injuries.

00218549

80.    The Door Defect renders the Class Vehicles unsafe and unmerchantable.

81.    Yet, Honda has not released any remedies for the Door Defect.

**C.    Honda knew about the Door Defect pre-sale**

82.    Honda knew, should have known, or was reckless in not knowing about the Door Defect since the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles.

83.    Honda and its suppliers perform pre-release design, testing, and validation of all the parts, components, systems, and features, including PPAP, DFMEA, MFMEA, DVP&R, and other tests.

84.    For example, FMEA tests assess methods or modes by which a particular component or system might fail. Such testing examines the materials used in each component, the assembly of the part, and whether use in various manners would cause the part to fail.

85.    FMEA testing would also explore, among other things, how and under what conditions the Obstruction Detection system could fail, how likely failure was under different conditions, and how likely each condition tested was to occur.

86.    If properly performed, FMEA testing here would have revealed that the Class Vehicles were susceptible to the Door Defect.

87.    Honda also performs field testing at its proving grounds in California and Ohio. Considering the early time in service and frequency at which the Door Defect becomes apparent, Honda would have learned about the Door Defect from this pre-release testing.

88.    During these phases, Honda would have gained comprehensive and exclusive knowledge about the engine and its components, particularly the basic engineering principles behind the construction and function of the doors, including the Obstruction Detection system and its performance in the field.

CLASS ACTION COMPLAINT

89.    In fact, Honda admitted it knew about the potential of the pinch sensors to fail to detect objects in its owners' manuals, yet Honda did not disclose and actively conceals the specific conditions under which the Door Defect would manifest (which are normal, everyday conditions), which are materials facts that would influence Plaintiff's and other Class members' purchasing decisions.

90.    Instead, Honda installed the defective doors and pinch sensors in the Class Vehicles while marketing and selling these vehicles to unsuspecting consumers without disclosing the safety risk or warning to Class members.

91.    After the Class Vehicles reached the market, Class member complaints confirmed Honda's pre-sale testing.

92.    Specifically, Honda, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from and to the National Highway Traffic Safety Administration (NHTSA), (4) within warranty and post-warranty claims, (5) obstruction protection failure in prior model years, (6) pre-sale durability testing, and (7) other various sources, was aware of the Door Defect but failed to notify customers about it, or provide any adequate remedy for it.

93.    Honda has admitted it routinely monitors these data sources to monitor product performance. *See In re Honda Idle Stop Litigation*, 22-cv-04252-MCS-SK (C.D. Cal.), Doc. No. 137-1, Page ID #:4744.

94.    During its monitoring, Honda would have encountered the following complaints, which are just examples of the complaints available to Honda:

ON JUNE 3RD MY 4 YR OLD DAUGHTER WAS SECURELY RESTRAINED IN HER BRITAX CLIGHTIGHT 5 POINT HARNESS IN THE SEAT BEHIND THE DRIVER IN THE MIDDLE ROW. WE WERE PARKED IN A PARKING LOT AFTER A GROCERY TRIP AND I WAS GETTING READY TO RETURN HOME AFTER SHOPPING. I PUT HER IN THE CAR AND CLOSED THE DOOR OF THE VAN. SHE TRIED STOPPING THE DOOR WITH HER FOOT BUT HER FOOT DIDN'T REACH THE PRESSURE SENSOR ON THE OUTSIDE OF THE DOOR (THE THIN BLACK TUBING ON THE OUTSIDE

CLASS ACTION COMPLAINT

00218549

OF THE VEHICLE) SO THE DOOR CLOSED ON HER FOOT CAUSING BRUISING.I TALKED TO 3 HONDA DEALERS AND I HAVE A COMPLAINT FILED WITH HONDA. WHEN HONDA RETURNED MY CALL I WAS INSTRUCTED THAT HIS JOB WAS TO INFORM ME THAT THE VEHICLE HAS LIMITATIONS AND THAT THE LAST THREE INCHES OF THE DOOR IS THE "POINT OF NO RETURN" WHERE THE DOOR NEEDS MOMENTUM TO LOCK. THE LAST EXPERIENCE WAS AT THE HONDA STORE WHERE A SALESMAN SHOWED ME THE 2019 HONDA. I DESCRIBED THE INCIDENT TO HIM AND ASKED HIM TO TRY STOPPING THE DOOR FROM THE INSIDE WITHOUT TOUCHING THE SENSOR ON THE OUTSIDE. HE FIRST TOUCHED THE OUTSIDE SENSOR. I HAD HIM RETRY STOPPING THE DOOR ONLY APPLYING PRESSURE TO THE INSIDE OF THE DOOR WHERE MY DAUGHTERS FOOT WAS. HE SAID THE "POINT OF NO RETURN" ARGUMENT FROM HONDA OVER THE PHONE WASN'T TRUE BECAUSE THE PRESSURE SENSOR STOPPED THE DOOR WHEN HE TOUCHED IT AN INCH FROM THE DOOR. HE TOLD ME HE THOUGHT IT WAS ODD BECAUSE THE TAILGATE RETRACTS WHEN TOUCHED. HE TOLD ME HE WAS GOING TO FIND OUT WHO I SHOULD CONTACT BUT NEVER GOT BACK TO ME. NO ONE CAN TELL ME HOW MUCH PRESSURE WAS APPLIED TO MY DAUGHTERS FOOT THAT CAUSED THE SERVE BRUISING (NHTSA ID 11102639; Complaint Date 6/18/2018).

I BOUGHT MY 2019 HONDA ODYSSEY EX-L NAVI RES YESTERDAY ON 9/15/18. WHILE THE VEHICLE WAS PARKED AND STATIONARY, I ATTEMPTED TO OPEN THE PASSENGER DOOR USING THE DRIVER BUTTON. IT WOULD OPEN AND THEN ABOUT HALFWAY IT WOULD CLOSE. I ATTEMPTED THIS SEVERAL TIMES WITH THE SAME RESULT. I THEN TRIED TO OPEN USING THE PASSENGER EXTERIOR HANDLES BUT STILL THE SAME RESULT. WHEN IT STARTED TO CLOSE AGAIN I TRIED TO SEE IF IT WOULD OPEN IF I MANUALLY DID IT BUT IT ALMOST CRUSHED MY HAND. LUCKILY IT WAS ONLY MY SHIRT THAT GOT STUCK. I WAS ABLE TO FORCE IT OPEN USING MY SHOULDERS. THE VEHICLE ONLY HAD 178 MILES. (NHTSA ID 11129729; Complaint Date 9/16/2018).

00218549

AUTOMATIC DOOR ON THE PASSENGER SIDE CLOSES AS PASSENGER TRIES TO GET OUT OF THE VAN. DOOR BOUNCES BACK AND FORTH AND ALMOST INJURED THE PASSENGER. ON A SEPARATE OCCASION, THE SAME PASSENGER SIDE DOOR WAS BEING OPENED FROM THE OUTSIDE AND HALFWAY AFTER IT OPENED IT BOUNCED AND CLOSED ALMOST INJURING MY SON AND THE PRESCHOOL TEACHER. (NHTSA ID: 11152880; Complaint Date: 11/20/2018)

TL* THE CONTACT OWNS A 2018 HONDA ODYSSEY. WHILE THE VEHICLE WAS PARKED, THE CONTACT WAS REMOVING ITEMS FROM THE VEHICLE WITH THE PASSENGER SLIDING DOOR OPEN. THE SLIDING DOOR WOULD INADVERTENTLY CLOSE, CAUSING THE CONTACT TO BECOME PINNED BETWEEN THE SLIDING DOOR AND THE DOOR FRAME. THERE WERE NO INJURIES. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER AND DEALER WERE NOT NOTIFIED. THE FAILURE MILEAGE WAS 15,000. (NHSTA ID: 11172779; Complaint Date: 1/29/2019).

UNKNOWN My 3 year old's hand was crushed in the sliding door. The door closed completely, latched and locked (beeped). The door did not recognize resistance when closing and did not reopen. Medical treatment is forthcoming. The picture attached was taken approximately an hour and a half after the incident. (NHTSA ID: 11454941; Complaint Date: 3/2/2022).

Passenger side, sliding door. The door closes on its own randomly but becoming more frequent. I have taken the van to the dealer multiple times and they can not figure out what is wrong. There was no warning light or error shown. Today the door shut on my son's foot as he was getting in the car. The door fully closed and pinned his foot causing him great pain. He could not twist to open the door and free himself. The door did not safety bump open (as it should have if anything was in the way of closing) It was not until I heard his screams of pain that I ran to his side of the car and opened the door, freeing him. I have attached the photo of his foot. (NHTSA ID 11460849; Complaint Date 4/15/2022).

CLASS ACTION COMPLAINT

00218549

Yesterday we were in our minvan (I had not entered yet and was standing outside the fornt passenger door but wife, children, and dog were inside. My daughter mashed the button to close the power sliding door on the right side of the van but did not notice that the dogs tail was wagging near the door entrance. All of a sudden I heard loud screaming and I opened the door on the right side. She was bleeding and in tears and said that the power door had closed on our dog's tail. I am a physician so I provided first aid. My concern is that when we bought the van we aksed about the power doors because we were concerned about them possibly closing on someone or something since they can be closed by multiple passengers. The salesmen assured us that the doors would not close on anything or anyone and would reverse if they met any resistance. Well the door completely closed all the way in this case despite the dogs tail sticking out of it. (NHTSA ID: 11486694; Complaint Date: 9/26/2022).

Passenger sliding door automatically closes intermittently while opening has been an ongoing issue at one point closed on my youngest daughters leg smashing between door and door jam. Understanding it opening while closing because something was in its path but not closing during the point operation. This is been reported to the dealership many times also gave them a video of it happening, told if we don't see it we can't fix it. (NHTSA ID 11536756; Complaint Date 8/6/2023).

My child was inside the minivan in the 2nd row and pressed the close door button on the sliding door while holding their other hand on the door jamb near the handle on the interior frame. The door slid closed and smashed their hand hard, automatically latching the door with their hand crushed inside the door. This is possible because their is a pinch sensor, but it is only on the outside edge of the door. So anything in between the door and the frame on the interior edge can be crushed hard without any sensor to detect and prevent it. I tested this with a flip flop and confirmed that it could be placed inside almost the entire width of the door and the door would still close with unrelenting full force. This does not seem to be a manufacturing defect, but instead seems to be a significant safety design defect and puts children or adults inside the vehicle at risk for injury including broken fingers. (NHTSA ID: 11542675; Complaint Date: 9/5/2023).

CLASS ACTION COMPLAINT

00218549

The sensor to open the sliding door on our left side, that stops it from closing when something is in between, did not work today. My 5 year old was reaching in as it was closing to grab her jacket. I was in the front seat, about to get out. I heard the door close and her scream. Her hand was stuck with the door fully closed, and I had to push the Open button twice to get it to release her hand. The sensor should have prevented it from closing and did not. (NHTSA ID: 11548889; Complaint Date: 10/8/2023).

My 3 year old daughter had the sliding door shut on her hand completely. It shut and sealed in place whereas it would normally beep and reopen when it sensed an object in the path. (NHTSA ID: 11560942; Complaint Date: 12/19/2023).[14]

95.     Owners and lessees of the Class Vehicles have also reported the Door Defect on social media platforms and online forums, including Honda Odyssey-specific forums such as "www.odyclub.com." Below is a sample of complaints posted to these forums:

- "My wife was carrying in our infant and our 2 1/2 and 3 year old was getting themselves out of the van like they have done many times before. After quickly setting our infant down in side she came right back out to get the diaper bag and to help the two toddlers and she noticed the door closed and our 3 year old was screaming. She tried to open the sliding door but it was locked tried and the Auto Unlock didn't work when she grabbed the handle. She had to open the passenger door and unlock the doors to get the door open to free our son right hand. Attached is a picture of his hands. As you can see it was his whole hand, not just the fingers. Shouldn't the anti pinch feature engage and retract the door? Who at Honda should I contact about this?"

  https://www.odyclub.com/threads/anti-pinch-failed.356845/

- **"Safety PSA: The pinch sensors on the sliding doors are on the outside edge of the door. A child (or adult) can easily get their fingers smashed HARD in the door on the inside edge**.

---

[14]     All NHTSA complaints included in this Complaint are complete and verbatim copies pulled directly from NHTSA's website.

00218549

My family has a 2023 Odyssey and it's our first minivan. Maybe this is just a common issue across all minivans, but it's something we unfortunately had to learn the hard way. My child was inside the minivan and they pressed the close door button while holding their other hand on the door jamb near the handle on the interior. The door closed on their tiny hand, smashing it HARD, and even latched itself before I had a chance to stop it.

I couldn't believe this was possible, assuming there would be a pinch sensor that would prevent smashed fingers. Turns out there is, but it's on the outside edge of the door, essentially only preventing smashed fingers from the outside. Anything on the inside edge of the door is getting smashed to hell. You can do what I did and test this out with a flip flop or something and see how unforgiving this is.

I know what some are gonna say, "You should be watching your kid." And yes, that's true, but if you've got kids you know that it's impossible to watch them 100% of the time and it really only takes a few seconds for something like this to happen.

Honestly, this seems like a significant safety design defect and something that would be easily preventable with pinch sensor on the inside edge of the door. Overall, I love our Odyssey, but this really infuriated me. I don't know what to do other than vent here. I can't imagine Honda giving a hoot unless this is a common issue that ends up giving them bad press."

https://www.reddit.com/r/HondaOdyssey/comments/16auzkm/safety_psa_the_pinch_sensors_on_the_sliding_doors/

96.     Upon information and belief, Toyota monitors social media platforms and online forums, including Honda Odyssey-specific forums such as "www.odyclub.com." Accordingly, Honda is and was aware of the numerous, widespread complaints about the Door Defect in the Class Vehicles

97.     These complaints are a mere sampling of the complaints available to Honda from NHTSA's website, other third-party websites, its internal warranty and Techline databases, and other direct reporting to Honda, as the above complaints indicate the first complaint was submitted to Honda in June 2018.

98.    Honda's acts and omissions have unnecessarily put the safety of Class Members and the public in jeopardy.

99.    Further, because of Honda's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.

100.    Honda undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

101.    Had Plaintiff known of the Door Defect at the time of purchase or lease, she would not have bought or leased the Vehicle, or she would have paid substantially less for the Class Vehicle.

102.    As a result of the Door Defect and the monetary costs associated with attempting to repair it, Honda and the other Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Honda's conduct.

103.    Accordingly, Plaintiff brings this action to redress Honda's violations of various consumer protection statutes, and also seeks recovery for Honda's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

**D.    Honda's Warranties**

104.    Honda has issued a Limited Vehicle Warranty for the Class Vehicles. Under the Limited Vehicle Warranty, Honda agreed to repair defects reported on the Class Vehicles within 3 years or 36,000 miles whichever comes first.

105.    Repairs associated with the Door Defect are included in this warranty.

106.    Honda instructs vehicle owners and lessees to bring their vehicles to a certified dealership for warranty repairs.

107.    Many owners and lessees have presented Class Vehicles to Honda-certified dealerships with complaints related to the Door Defect.

108.    Honda has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform repairs to correct the Door Defect.

**FRAUDULENT OMISSION/CONCEALING ALLEGATIONS**

109.    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for making false and misleading statements regarding the Class Vehicles. Honda necessarily are in possession of all this information. Plaintiff's claims arise out of Honda's fraudulent omission/concealment of the Door Defect, despite their representations about the quality, safety, and reliability of the Class Vehicles.

110.    Plaintiff alleges that at all relevant times, including specifically at the time he and Class Members purchased their Class Vehicle, Honda knew, or were reckless in not knowing, of the Door Defect; Honda had a duty to disclose the Door Defect based upon their exclusive knowledge; and Honda never disclosed the Door Defect to Plaintiff or the public at any time or place in any manner.

111.    Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Honda.

112.    **Who:** Honda actively concealed and omitted the Door Defect from Plaintiff and Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Honda responsible for such decisions.

113.    **What:** Honda knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Door Defect, as alleged herein. Honda concealed and omitted the Door Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

CLASS ACTION COMPLAINT

00218549

114.   **When:** Honda concealed and omitted material information regarding the Door Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Honda still has not disclosed the truth about the full scope of the Door Defect in the Class Vehicles to anyone outside of their respective entities. Honda has never taken any action to inform consumers about the true nature of the Door Defect in Class Vehicles. And when consumers brought their vehicles to Honda complaining of the Door Defect, Honda denied any knowledge of or repair for the Door Defect.

115.   **Where:** Honda concealed and omitted material information regarding the true nature of the Door Defect in every communication they had with Plaintiff and Class Members and made representations about the quality, safety, and reliability of the Class Vehicles. Plaintiff is unaware of any document, communication, or other place or thing, in which Honda disclosed the truth about the full scope of the Door Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's websites. There are channels through which Honda could have disclosed the Door Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists.

116.   **How:** Honda concealed and omitted the Door Defect from Plaintiff and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Honda actively concealed and omitted the truth about the existence, scope, and nature of the Door Defect from Plaintiff and Class Members at all times, even though it knew about the Door Defect and knew that information about the Door Defect would be important to a

00218549

reasonable consumer, and Honda promised in its marketing materials that Class Vehicles have qualities that they do not have.

117.  **Why:** Honda actively concealed and omitted material information about the Door Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## CLASS ACTION ALLEGATIONS

118.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

119.  Excluded from the Class are Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition.

120.  Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

121.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-

00218549

wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

122.   This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))**

123.   The members of the Class are so numerous that their individual joinder is impracticable.

124.   Plaintiff is informed and believe that hundreds of thousands of Class Vehicles were sold across the United States.

125.   The number and identity of Class members can be obtained through business records regularly maintained by Defendant, its employees and agents and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

**Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2))**

126.   There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c. Whether Defendant designed, manufactured, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States knowing the door latching system was prone to malfunction;

d. When Defendant learned of the Door Defect;

e. Whether Defendant concealed the Door Defect from consumers;

CLASS ACTION COMPLAINT

f.  Whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

g.  Whether Defendant was unjustly enriched by its deceptive practices; and

h.  Whether Plaintiff and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

**Typicality (Federal Rule of Civil Procedure 23(a)(3))**

127.  Plaintiff's claims are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Honda's conduct as alleged herein.

128.  Plaintiff and the members of the Class were and are similarly or identically harmed by Honda's unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

**Adequacy (Federal Rule of Civil Procedure 23(a)(4))**

129.  Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.

130.  There are no material conflicts between Plaintiff's claims and those of the members of the Class that would make class certification inappropriate.

131.  Counsel for the Class will vigorously assert the claims of all Class members.

**Superiority (Federal Rule of Civil Procedure 23(b)(3))**

132.  This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

00218549

CLASS ACTION COMPLAINT

133.   The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

134.   Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them.

135.   Even if Class members themselves could afford such individual litigation, the court system could not.

136.   In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.

137.   Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

138.   Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.

139.   Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notice may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE MAGNUSSON-MOSS WARRANTY ACT

140.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

00218549

1    141.    Plaintiff brings this count on behalf of herself and the other Class

2    Members.

3    142.    Plaintiff and the Class Members are "consumers" within the meaning

4    of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

5    143.    Honda is a supplier and warrantor within the meaning of 15 U.S.C.

6    §§ 2301(4)-(5).

7    144.    The Class Vehicles are "consumer products" within the meaning of

8    15 U.S.C. § 2301(1).

9    145.    Honda's 3 year/36,000 miles Limited Basic Warranty is a "written

10    warranties" within the meaning of 15 U.S.C. § 2301(6).

11    146.    Honda breached the express warranties by: selling and leasing Class

12    Vehicles with suspensions/steering linkage system that were defective in materials

13    and/or workmanship, requiring repair or replacement within the warranty period;

14    and refusing and/or failing to honor the express warranties by repairing or

15    replacing, free of charge, the suspension or any of its component parts in order to

16    remedy the Door Defect.

17    147.    Plaintiff and the other Class members relied on the existence and

18    length of the express warranties in deciding whether to purchase or lease the Class

19    Vehicles.

20    148.    Honda's breach of the express warranties has deprived Plaintiff and

21    the other Class members of the benefit of their bargain.

22    149.    The amount in controversy of Plaintiff's individual claims meets or

23    exceeds the sum or value of $25.00. In addition, the amount in controversy meets

24    or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed

25    on the basis of all claims to be determined in this suit.

26    150.    Honda has been afforded a reasonable opportunity to cure their

27    breach of the written warranties and/or Plaintiff and the other Class members were

28    not required to do so because affording Honda a reasonable opportunity to cure

00218549

their breach of written warranties would have been futile. Honda was also on notice of the alleged defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

151.   As a direct and proximate cause of Honda's breach of the written warranties, Plaintiff and the other Class members sustained damages and other losses in an amount to be determined at trial. Honda's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## COUNT II

## VIRGINIA CONSUMER PROTECTION ACT

### Va. Code Ann. § 59.1-196, *et seq.*

152.   Plaintiff incorporates by reference each allegation as if fully set forth herein.

153.   Plaintiff brings this cause of action on behalf of himself and on behalf of members of the Class who purchased, leased, or owned the Class Vehicles in the state of Virginia ("Virginia Class Members" for purposes of this Count).

154.   Honda, Plaintiff, and the other Virginia Class Members are "persons" within the meaning of the Virginia Consumer Protection Act ("VCPA").

155.   In selling and leasing the Class Vehicles, Honda was engaged within a "consumer transaction" within the meaning of the VCPA.

156.   The VCPA prohibits any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

157.   The VCPA prohibits "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model."

158.   The VCPA prohibits "[a]dvertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or

1   reconditioned, or that are 'seconds,' irregulars, imperfects, or 'not first class,'

2   without clearly and unequivocally indicating in the advertisement or offer for sale

3   that the goods are used, secondhand, repossessed, defective, blemished,

4   deteriorated, reconditioned, or are "seconds," irregulars, imperfects or "not first

5   class."

6       159.   The VCPA prohibits "[a]dvertising goods or services with intent not

7   to sell them as advertised, or with intent not to sell at the price or upon the terms

8   advertised."

9       160.   By the conduct described in detail above and incorporated herein,

10  Honda engaged in unfair or deceptive acts in violation of the VCPA.

11      161.   Honda's omissions regarding the Door Defect, described above, that

12  results in the systems failure to detect obstruction s in the door's path, are material

13  facts that a reasonable person would have considered in deciding whether or not

14  to purchase (or to pay the same price for) the vehicle.

15      162.   Honda intended for Plaintiff to rely on Honda omissions of fact

16  regarding the Door Defect.

17      163.   Plaintiff justifiably acted or relied to their detriment upon Honda's

18  omissions of fact concerning the above-described Door Defect that results in the

19  system's failure to detect obstruction s in the door's path.

20      164.   Had Honda disclosed all material information regarding the Door

21  Plaintiff, then Plaintiff would not have purchased or leased the vehicle or would

22  have paid less to do so.

23      165.   Honda's omissions deceived Plaintiff and the other Class members.

24      166.   Honda acted willfully in concealing, and not disclosing, the Door

25  Defect from Plaintiff and the other Class members.

26      167.   In addition to being deceptive, the business practices of Honda were

27  unfair because Honda knowingly sold to Plaintiff a vehicle with a defective engine

28  that is essentially unusable for the purposes for which they were sold.

00218549

168.   The injuries to Plaintiff are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff or to any competition under all of the circumstances.

169.   Moreover, in light of Honda's exclusive knowledge of the Door Defect, the injury is not one that Plaintiff could have reasonably avoided.

170.   Further, and to the extent required by law, Honda had a duty to disclose the Door Defect because disclosure of the Door Defect was necessary to dispel misleading impressions about the Class Vehicles' reliability and durability that were or might have been created by partial representation of the facts.

171.   Specifically, Honda promoted, through its advertisements available to all Class members, that the vehicles were reliable and durable.

172.   Honda also disclosed information concerning the Obstruction Detection system in window stickers associated with the Class Vehicles, without disclosing that these engines contained an inherent defect that would be material to any purchaser or lessee.

173.   Specifically, Honda owed Plaintiff and Class members a duty to disclose all the material facts concerning the Door Defect because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiff and the Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

174.   Honda's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

175.   Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct result of Honda's concealment of and failure to disclose material information, namely, the Door Defect.

176.   Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if

00218549

the true nature of the Class Vehicles had been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles.

177.    Defendant's violations present a continuing risk to Plaintiff and the Class, as well as to the general public, Defendant's unlawful acts and practices complained of herein affect the public interest.

178.    Plaintiff, individually and on behalf of the Virginia Class Members notified Honda of the Door Defect in the Class Vehicles—and Honda's corresponding breach of warranties and violations of state consumer protection acts—through a notice letter dated September 10, 2024, and sent by United States Certified Mail to Honda through its registered agent at 2 North Jackson Street STE 607, Montgomery, Alabama 36104.

179.    Plaintiff and the Virginia Class Members seek compensatory damages, punitive damages, reasonable attorneys' fees, and any other just and proper relief available under the VCPA.

## COUNT III

### BREACH OF EXPRESS WARRANTY

180.    Plaintiff incorporates by reference each allegation as if fully set forth herein.

181.    Plaintiff brings this count on behalf of herself and the other Class Members.

182.    Honda is and was at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code (§ 2-313 *et seq.*) and Va. Code Ann. §§ 8.2-104, 8.2-103.

183.    With respect to leases, Honda is and was all relevant times "lessors" of motor vehicles under the Uniform Commercial Code and Va. Code Ann. § 8.2a-103.

184.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Uniform Commercial Code and Va. Code Ann. § 8.2-105 and 8.2a-

1    103.

2    185.    In its Limited Warranty, Honda expressly warranted that it would

3    repair or replace defects in material or workmanship free of charge if they became

4    apparent during the warranty period. Honda provides the following relevant

5    language in its Limited Warranty guides for the Class Vehicles: "Honda will repair

6    or replace any part that is defective in material or workmanship."

7    186.    This warranty is for Honda vehicles registered in the United States

8    and normally operated in the United States and Canada and is provided to the

9    original and any subsequent owners of the vehicle during the warranty period.

10   187.    As further stated in the Limited Warranty guide, "[t]he warranty

11   covers repairs to correct any vehicle defect, not slight noise, vibrations, or other

12   normal characteristics of the vehicle related to materials or workmanship occurring

13   during the warranty period."

14   188.    As further stated, warranty repairs, including towing, parts, and labor,

15   will be made at no charge.

16   189.    Honda's Limited Warranty formed the basis of the bargain that was

17   reached when Plaintiff and the other Class Members purchased or leased their

18   Class Vehicles equipped with the defective Obstruction Detection system.

19   190.    Honda breached the express warranty to repair "any defect" by failing

20   to repair the Door Defect.

21   191.    Further, to the extent that the Limited Warranty is construed to be

22   limited to vehicle defects related to materials or workmanship, Honda has

23   breached the Limited Warranty.

24   192.    The Door Defect is a uniform design defect that is related to materials.

25   193.    Specifically, the Obstruction Detection system fails to detect

26   obstructions in the door's path.

27   194.    Honda has not repaired, and has been unable to repair, the Door

28   Defect.

CLASS ACTION COMPLAINT

195.   Honda had actual knowledge of the Door Defect and was provided with additional notice of the Door Defect by way of notice letter, as well as through numerous complaints filed against it directly and through its dealers. Moreover, notice is futile due to Honda's knowledge of the Defect but refusal to remedy it.

196.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

197.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

198.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

199.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Honda's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

200.   Plaintiff, individually and on behalf of the other Class Members notified Honda of the Door Defect in the Class Vehicles—and Honda's corresponding breach of warranties and violations of state consumer protection

CLASS ACTION COMPLAINT

00218549

acts—through a notice letter dated September 10, 2024, and sent by United States Certified Mail to Honda through its registered agent at 2 North Jackson Street STE 607, Montgomery, Alabama 36104.

201. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

202. Plaintiff incorporates by reference each allegation as if fully set forth herein.

203. Plaintiff brings this count on behalf of herself and the other Class Members.

204. Honda is and was at all relevant times "merchants" and "sellers" with respect to motor vehicles under the Uniform Commercial Code (U.C.C. § 2-314, et seq.) and Va. Code Ann. §§ 8.2-104, 8.2-103.

205. With respect to leases, Honda is and was all relevant times "lessors" of motor vehicles under the Uniform Commercial Code and Va. Code Ann. § 8.2a-103.

206. The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code and Va. Code Ann. § 8.2-105 and 8.2a-103.

207. Honda manufactured and sold the defective Class Vehicles to Plaintiff and the other Class Members.

208. The Class Vehicles are defective because they have Obstruction Detection systems that fail to detect obstructions in the doors, causing the passengers to suffer severe injuries, particularly to their arms and legs.

209. These defects existed at the time the Class Vehicles left the control of Honda.

210.   Based upon these defects, Honda has failed to meet the expectations of a reasonable consumer.

211.   The Class Vehicles are unfit for their ordinary, intended use, because they suffer from the Door Defect, which causes the system to fail to detect obstructions in the door's path.

212.   Honda had actual knowledge of the Door Defect and was provided with additional notice of the Door Defect by way of notice letter, as well as through numerous complaints filed against it directly and through its dealers. Moreover, notice is futile due to Honda's knowledge of the Defect but refusal to remedy it.

213.   Plaintiff, individually and on behalf of the other Class Members notified Honda of the Door Defect in the Class Vehicles—and Honda's corresponding breach of warranties and violations of state consumer protection acts—through a notice letter dated September 10, 2024, and sent by United States Certified Mail to Honda through its registered agent at 2 North Jackson Street STE 607, Montgomery, Alabama 36104.

214.   Moreover, notice is futile because Honda has continually failed to provide adequate remedies to Plaintiff and Class members.

215.   The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiff and the other Class members.

**COUNT V**

**FRAUDULENT OMISSION / CONCEALMENT**

216.   Plaintiff incorporates by reference each allegation as if fully set forth herein.

217.   Plaintiff brings this count on behalf of herself and the other Class Members.

218.   Honda was aware of the Door Defect when it marketed and sold or leased the Class Vehicles to Plaintiff and the other Class Members.

219.   Having been aware of the Door Defect in the Class Vehicles and

CLASS ACTION COMPLAINT

having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Door Defect, Honda had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

220.   Honda did not disclose the Door Defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

221.   The Door Defect concerns material information with respect to the sale or lease of the Class Vehicles.

222.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class Members reasonably relied on Honda to disclose known material defects with respect to the Class Vehicles.

223.   Had Plaintiff and the other Class Members known of the Door Defect, they would have not purchased or leased the Class Vehicles or would have paid less for the vehicles.

224.   Through its omissions regarding the Door Defect, Honda intended to induce—and did induce—Plaintiff and the other Class Members to purchase or lease a Class Vehicle they otherwise would not have purchased or leased or to pay more for a Class Vehicle then they otherwise would have paid.

225.   As a direct and proximate result of Honda's omissions, Plaintiff and the other Class Members either overpaid for the Class Vehicles or would not have purchased or leased the Class Vehicles at all if the Door Defect had been disclosed. Therefore, Plaintiff and the other Class Members have incurred damages in an amount to be determined at trial.

**COUNT VI**

**UNJUST ENRICHMENT**

226.   Plaintiff incorporates by reference each allegation as if fully set forth herein.

00218549

227.   Plaintiff brings this count on behalf of herself and the other Class Members.

228.   Honda has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Honda's concealment of the Door Defect, and Plaintiff and the other Class Members have overpaid for these vehicles.

229.   Honda has received and retained unjust benefits from Plaintiff and the other Class Members, and inequity has resulted.

230.   It is inequitable and unconscionable for Honda to retain these benefits.

231.   Because Honda concealed its fraud and deception, Plaintiff and the other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Honda's misconduct.

232.   Honda knowingly accepted the unjust benefits of its misconduct.

233.   As a result of Honda's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class Members in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants Honda Motor Company Limited and American Honda Motor Co., Inc., as follows:

A.     An order certifying the proposed Class and designating the named Plaintiff as the named representative of the Class and designating the undersigned as Class Counsel for the Class;

B.     A declaration that the Obstruction Detection system in Class Vehicles are defective;

CLASS ACTION COMPLAINT

C.    A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.    An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Defendants to permanently, expeditiously, and completely repair the Class Vehicles;

E.    An award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, including overpayment and diminution in value damages, and punitive damages, in an amount to be proven at trial, as well as other damages available at law;

F.    An award to Plaintiff and Class Members for the return of the purchase price of the Class Vehicles, with interest from the time it was paid, the reimbursement of the reasonable expenses occasioned by the sale, and damages;

G.    A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Door Defect in Plaintiff's and Class Members' Class Vehicles, can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the defect;

H.    A declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

I.    An award of attorneys' fees and costs, as allowed by law;

J.    An award of pre-judgment and post-judgment interest, as provided by law;

K.    Leave to amend this Complaint to conform to the evidence produced at trial; and

CLASS ACTION COMPLAINT

1    L.    Such other relief as may be appropriate under the circumstances.

2    **JURY DEMAND**

3    Plaintiff hereby demands a trial by jury on all claims so triable.

4                          Respectfully submitted,

5    Dated: September 13, 2024       BLOOD HURST & O'REARDON, LLP
                                     TIMOTHY G. BLOOD (149343)
6                                    THOMAS J. O'REARDON II (247952)
                                     PAULA R. BROWN (254142)
7                                    ADAM M. BUCCI (327312)

8                                    By:      s/ Timothy G. Blood
                                          TIMOTHY G. BLOOD
9
                                     501 West Broadway, Suite 1490
10                                   San Diego, CA  92101
                                     Tel: 619/338-1100
11                                   619/338-1101 (fax)
                                     tblood@bholaw.com
12                                   toreardonbholaw.com
                                     pbrown@bholaw.com
13                                   abucci@bholaw.com

14   Dated: September 13, 2024       BEASLEY, ALLEN, CROW,
                                        METHVIN, PORTIS & MILES, P.C.
15                                   W. DANIEL "DEE" MILES, III *
                                     H. CLAY BARNETT, III *
16                                   J. MITCH WILLIAMS *
                                     DYLAN T. MARTIN *
17                                   TRENT H. MANN *

18                                   By:    s/ W. Daniel "Dee" Miles, III
                                          W. DANIEL "DEE" MILES, III
19
                                     218 Commerce Street
20                                   Montgomery, AL 36104
                                     Tel: 334/269-2343
21                                   334/954-7555 (fax)
                                     Dee.Miles@BeasleyAllen.com
22                                   Clay.Barnett@BeasleyAllen.com
                                     Mitch.Williams@Beasleyallen.com
23                                   Dylan.Martin@beasleyallen.com
                                     Demet.Basar@beasleyallen.com

24                                   *Counsel for Plaintiff*

25

26

27

28

42
CLASS ACTION COMPLAINT

00218549